Central Eureka, Inc., demandante y apelante, *v.* Luis A. Fajardo Cardona, demandado y apelado.

No. 5422.—*Sometido:* Noviembre 25, 1932. *Resuelto:* Julio 29, 1933.

*Oscar Souffront,* abogado de la apelante; *Nazario & García Méndez,* abogados del apelado.

El Juez Asociado Señor Córdova Dávila, emitió la opinión del tribunal.

Central Eureka, arrendataria de una finca rústica de setenta y nueve cuerdas que se describe en la demanda, alega que el demandado y apelado es dueño de una finca colindante que también se describe en la demanda; que dicho demandado y apelado, en su carácter de vicepresidente de la Central Eureka y como jefe y administrador de los campos de dicha central, tuvo bajo su cuidado y atención como encargado de su cultivo y explotación para uso y beneficio de la arrendataria Central Eureka, la finca rústica arrendada por la demandante a su dueño don Tomás Quiñones y Guzmán, por un período de doce años, y que dicho demandado cultivaba al mismo tiempo ambas parcelas de terreno, la de su propiedad y la arrendada por la Central demandante, y que dicho demandado estuvo encargado de administrar y atender todas las fincas pertenecientes a la Central Eureka y las poseídas en arrendamiento, hasta el día 15 de marzo de 1919; que en virtud de contrato privado otorgado y suscrito entre el demandado y la demandante, representada por su presidente don Mateo Fajardo Cardona, con fecha 15 de marzo de 1919, la demandante en este pleito entregó al demandado

la administración y cultivo, entre otras, de la finca rústica arrendada a don Tomás Quiñones, para que la cultivara y administrara por su cuenta, y que este contrato se hizo extensivo a la zafra existente y a las que existieran en adelante durante los años 1920 a 1926; que por convenio oral entre la central demandante, representada por su presidente don Mateo Fajardo Cardona, y el demandado don Luis A. Fajardo, dicho contrato se dejó sin efecto en los primeros días de enero del año 1920, en que quedó rescindido por acuerdo de ambas partes, en cuya fecha la Central Eureka volvió a hacerse cargo de todos sus campos, inclusive la finca arrendada a don Tomás Quiñones y Guzmán de que ya se ha hecho mención; que al hacer entrega el demandado de dicha parcela de terreno en los primeros días del mes de enero de 1920, alteró los lindes en la colindancia este de dicha finca, estableciendo como lindero de la misma, por su lado este, un callejón que dicho demandado había abierto durante el tiempo que fué administrador de los campos de la Central Eureka con anterioridad al día 15 de marzo del año 1919, sin que la demandante pueda determinar la fecha exacta en que dicho callejón fué hecho por dicho demandado; que este callejón fué abierto dentro de la finca rústica arrendada por la demandante, a una distancia de treinta y dos metros más o menos de la verdadera colindancia de dicha finca, apropiándose el demandado una faja de terreno de seis cuerdas con diez y nueve céntimos, que separó de la finca principal arrendada por la demandante, desposeyendo así el demandado a la corporación arrendataria de la parcela de terreno mencionada, a sabiendas de que la misma formaba parte de la finca rústica propiedad de don Tomás Quiñones y Guzmán; que la Central Eureka estuvo en posesión de la totalidad de la finca, incluyendo la faja de terreno anteriormente relacionada y de la cual fué desposeída por el demandado, desde el día primero de junio de 1912 hasta el mes de enero de 1920, y que ha venido desde entonces pagando las contribuciones y los cánones de arrendamiento, y que el demandado y ape-

lado, al apropiarse de la faja de terreno de seis cuerdas diez
y nueve céntimos, lo ha hecho ilegalmente y sin título o de-
recho alguno sobre la misma, aprovechándose de la relación
fiduciaria que como presidente de la Central Eureka y ad-
ministrador de sus campos gozó el demandado hasta el mes
de marzo de 1919; que tan pronto como terminó la cosecha
del año 1920 don Mateo Fajardo Cardona, presidente enton-
ces de la central demandante, se dió cuenta de la alteración
de lindes efectuada por el demandado, a quien se llamó la
atención sobre el particular y no habiéndose allanado a la
entrega y restitución de la faja de terreno mencionada, pro-
cedió la demandante a practicar una mensura de la finca
principal, cerciorándose de que efectivamente los lindes de
dicha propiedad habían sido corridos hacia la parte oeste de
dicha finca y que la Central Eureka había sido desposeída
de una faja de terreno perteneciente a la misma que estaba
en posesión del demandado don Luis A. Fajardo; que desde
dicha fecha hasta el año 1926 la Central Eureka vino con-
tinuamente reclamando al demandado la posesión de dicha
parcela de terreno sin éxito alguno hasta el año 1926 en que
el demandado convino con la central demandante que se mi-
diesen ambas parcelas, o sea la finca rústica propiedad de
la sucesión de don Tomás Quiñones y Guzmán y la otra finca
rústica, propiedad del demandado, conviniendo éste en res-
tituir a la finca de la sucesión Quiñones y Guzmán cualquier
medida de terreno que pudiera faltarle, siempre que de la
mensura resultare que la tenía en exceso, y habiéndose pro-
cedido a dicha mensura por el agrimensor don Tomás Bou-
cher resultó que la parcela de terreno propiedad de don To-
más Quiñones y Guzmán medía solamente en dicha fecha,
tomando como base la línea divisoria establecida por el de-
mandado, setenta y tres cuerdas cincuenta y cuatro céntimos
de otra, mientras que bajo la misma base la parcela de te-
rreno propiedad del demandado resultó tener una cabida
de noventa y cinco cuerdas ocho céntimos, incluyendo la faja
de terreno en disputa, sin que el demandado tuviese título

para una cabida mayor de setenta y nueve cuerdas setenta y tres céntimos, al igual que don Tomás Quiñones y Guzmán, ya que ambas fincas procedían de una de mayor cabida que fué dividida en dos partes exactamente iguales mediante las operaciones particionales de la testamentaría del Excelentísimo don Carlos M. Fajardo, anterior dueño de la totalidad de dichas fincas; que no conforme el demandado con la mensura practicada y planos levantados por el agrimensor Tomás Boucher requirió al agrimensor don Antonio Freyre para que en unión del propio agrimensor Tomás Boucher rectificasen conjuntamente dicha mensura, lo que hicieron, comprobando el Sr. Freyre la exactitud de la misma de acuerdo con los planos levantados por el agrimensor Sr. Boucher, y que a pesar de la rectificación por parte del agrimensor Sr. Freyre de la mensura practicada, el demandado don Luis A. Fajardo se negó entonces y se sigue negando todavía, arbitrariamente y en violación de lo convenido, a restituir a la Central Eureka la posesión de dicha faja de terreno de seis cuerdas con diez y nueve céntimos.

En estos hechos se basa la demandante para solicitar que se dicte sentencia condenando al demandado Luis Fajardo a restituirle la parcela de terreno de seis cuerdas diez y nueve céntimos que se describe en la demanda. También se reclaman, como una segunda causa de acción, los frutos producidos por dicha parcela de terreno, los cuales se estiman en la cantidad de $6,190.

Esta demanda fué excepcionada por el demandado sobre la base de que ni en la primera ni en la segunda causa de acción se aducen hechos suficientes determinantes de una causa de acción contra el demandado, y además que la primera causa de acción está prescrita de acuerdo con el artículo 1868, inciso primero, del Código Civil de Puerto Rico, y que la segunda está prescrita también de acuerdo con el inciso segundo del referido artículo.

La corte inferior declaró con lugar dichas excepciones previas, y entendiendo que la demanda no era susceptible de

enmienda, dictó sentencia desestimándola, con las costas a la demandante.

■ Alega la corporación apelante que la corte inferior cometió manifiesto error al declarar que la primera causa de acción de la demanda está prescrita por ministerio de la ley de acuerdo con el artículo 1868, inciso primero, del Código Civil de Puerto Rico.

Arguye la demandante que en este caso la acción para recobrar la posesión no se funda en la mera tenencia de la finca, sino en el derecho que como arrendataria de dicha finca tiene la demandante sobre la misma, por virtud de un contrato de arrendamiento efectuado entre los dueños de la finca mencionada y la demandante por el término de doce años y por el canon de $1,200 anuales los dos primeros años y $1,600 los restantes.

La demandante trata de establecer cierta distinción entre la mera tenencia de una cosa, que no supone título sino solamente el acto material de la ocupación, y la posesión adquirida en virtud de un contrato de arrendamiento, alegando que la primera está comprendida en la prescripción señalada en el inciso primero del artículo 1868 del Código Civil y la segunda no. Añade la demandante que la acción ejercitada se basa en el artículo 1463 (1450, edición 1930) del Código Civil, que no tiene señalado término especial de prescripción, debiendo acudirse a los preceptos legales que regulan la prescripción de las demás acciones reales.

Se da énfasis al hecho de que el contrato de arrendamiento celebrado entre la demandante y don Tomás Quiñones es inscribible en el registro de la propiedad. No vemos la importancia que pueda tener, para los efectos de reclamar la posesión perdida, el hecho de que el contrato sea inscribible o no. Los derechos que asistan al arrendatario para dirigirse contra el perturbador, cuando se trata de una perturbación de mero hecho, nada tienen que ver con el carácter inscribible o no inscribible del contrato. La ley no establece distinciones. En uno y otro caso el arrendatario

puede dirigirse contra el perturbador cuando éste no haya obrado en virtud de un derecho que le corresponde.

■■■ El artículo 1450 del Código Civil, edición 1930, que según la demandante sirve de base a esta acción, dice que el arrendador no está obligado a responder de la perturbación de mero hecho que un tercero causare en el uso de la finca arrendada; pero el arrendatario tendrá acción directa contra el perturbador. No existe perturbación de hecho cuando el tercero, ya sea la administración, ya un particular, ha obrado en virtud de un derecho que le corresponde. Para penetrarnos de lo que quiere significar el legislador al usar las palabras "perturbación de mero hecho" debemos interpretar conjuntamente este artículo y el 1449 que le precede. Ambos artículos se corresponden y se complementan, como dice Scaevola, haciendo ver que cuando el arrendatario sea interrumpido en el goce de la cosa, o cuando sobre ésta pretenda un tercero derecho de alguna clase, la aplicación de uno de esos preceptos excluye la del otro. El artículo 1449 dice que el arrendatario está obligado a poner en conocimiento del propietario, en el más breve plazo posible, toda usurpación o novedad dañosa que otro haya realizado o abiertamente prepare en la cosa arrendada. De modo que para que surja la obligación en el arrendatario de notificar al arrendador, debe haberse realizado o hallarse en vías de realización una usurpación o novedad dañosa. La perturbación de mero hecho no se considera como una novedad dañosa que lesione los derechos del arrendador ni tiene tampoco el carácter de una usurpación.

Interpretando los artículo 1559 y 1560 del Código español, equivalentes al 1449 y al 1450 de nuestro Código Civil, dice el comentarista Scaevola en el tomo 24, página 560, de sus comentarios al "Código Civil":

"*Perturbación de derecho y perturbación de hecho:* La base de aplicación de una u otra disposición legal ha de establecerse, en la verdadera inteligencia de las frases 'usurpación o novedad dañosa' y 'perturbación de mero hecho', de que se valen respectivamente los

artículos 1559 y 1560. Parecen corresponder aquéllas a las de 'perturbación de derecho y perturbación de hecho', que utilizan algunos tratadistas y legislaciones extranjeras para diferenciar los ataques a la cosa arrendada de que deben responder, en su caso respectivo, arrendador y arrendatario.

"Examinadas esas fuentes de información, en ninguna encontramos locuciones tan impropias como las de nuestro artículo 1559, para significar las perturbaciones de que debe responder el arrendador. Decir 'usurpación o novedad dañosa', sobre todo, contraponiendo estos conceptos a los de 'perturbaciones de mero hecho,' o es decir nada o querer significar precisamente lo contrario de lo que se pretende. El legislador se escudó, al parecer, con el precedente literal del Proyecto de 1851, abonando su misión en presencia de la multitud de problemas que la práctica plantea ante conceptos tan vaga y oscuramente concebidos.

"Por fortuna existen razones para asegurar que el primero de los artículos que comentamos alude a las usurpaciones efectivas o en grado de tentativa de una tercera persona, fundada para ello en algún título de derecho más o menos eficaz. Tales razones dimanan de la contraposición que dijimos debe establecerse entre los dos preceptos en estudio, y de la utilísima adición aclaratoria final del segundo de éstos, precisando acabadamente que no hay perturbación de hecho cuando el perturbador ha obrado en virtud de un derecho que le corresponde.

"Luego, si indirectamente advierte el artículo 1559 que el arrendatario no tiene acción directa contra el autor de la usurpación o novedad dañosa, las que sólo le obligan a ponerlas en conocimiento del arrendador, y el artículo 1560 da personalidad al arrendatario sólo para contestar o repeler las perturbaciones de mero hecho, la frase que se opone a esta última, aunque también con sabor. de excesiva generalidad es la de 'perturbación de derecho.'

"Decíamos antes que los términos de 'usurpación o novedad dañosa' inducían a pensar en idea opuesta a la que quiso referir el artículo 1559. En efecto, 'usurpación' supone algo así como despojo contra derecho; la acción de arrebatar lo que no nos pertenece.

"    *        *        *        *        *        *        *

"El Código de Chile (art. 1931), expresa que la acción de terceros que *pretendan derecho a la cosa arrendada,* se dirigirá contra el arrendador, y el arrendatario será sólo obligado a noticiarle la turbación o molestia que reciba de dichos terceros, *por consecuencia de los derechos que aleguen;* refiriéndose el artículo anterior (1930)

al caso en que el arrendatario sea turbado en su goce por vías de hecho de terceros que no pretenden derecho a la cosa arrendada, concediéndole facultad de perseguir en su propio nombre la reparación del daño.

"En muy parecido sentido se hallan redactados los correspondientes artículos del Código francés, del italiano y de otros que en los mismos se inspiraron.

"Pero es más; en el propio Código Civil español tenía el legislador un precedente y una enseñanza perfectamente utilizables para adoptar otra fórmula menos expuesta a dificultades de interpretación que la empleada en el artículo 1559. El artículo 511 del tratado de usufructo prescribe que el usufructuario estará obligado a poner en conocimiento del propietario cualquier acto de un tercero, de que tenga noticia, *que sea capaz de lesionar los derechos de propiedad,* y responderá, si no lo hiciere, de los daños y perjuicios como si hubieran sido ocasionados por su culpa. Advertida la análoga naturaleza que ofrecen el usufructo y el arrendamiento y la evidente semejanza de supuestos de que parten respectivamente los artículos 511 y 1559, se imponía el empleo de la misma técnica.

"En resumen, y sin que haya motivos para separarnos del criterio en que se inspiran los significativos precedentes expuestos, es de evidencia que los artículos 1559 y 1560 se corresponden y complementan, haciendo ver que cuando el arrendatario sea interrumpido en el goce de la cosa, o cuando sobre ésta pretenda un tercero derecho de alguna clase, la aplicación de uno de esos preceptos excluye la del otro.

"Si el tercero, de buena fe, e invocando un título de derecho más o menos eficaz, realiza o prepara algún acto, ya contra el dominio o contra cualquiera otra de las facultades dominicales en la cosa arrendada, corresponderá al dueño de ella salir a la defensa ante el ataque. Si ese tercero, sin más razón que su capricho o su mala fe, y hasta intención criminal a veces, interrumpe la facultad de disfrute en el arrendatario, y pretende por su sola autoridad arrebatar lo que le consta que no es suyo, puede dicho arrendatario denunciarle, desautorizarle por sí mismo lícitamente e impedirle en cualquier otra forma legal los actos de despojo."

■■■ Por más que la demanda en este caso ha sido inteligente y cuidadosamente redactada y por más que la demandante en su alegato se esfuerza en demostrar que la acción ejercitada se basa en el artículo 1450 del Código Civil,

sin embargo las mismas alegaciones están indicando que en la controversia establecida hay algo más que una cuestión de mero hecho.

La demandante nos dice que el demandado se ha apoderado de la faja de terreno ilegalmente, sin título o derecho alguno, apropiándosela y adhiriéndola a su finca, a sabiendas de que no le perteñece. Apropiarse significa tomar para sí alguna cosa, haciéndose dueño de ella. De manera que realmente se están atacando los derechos dominicales del arrendador sobre esa faja de terreno. La misma demandante apunta en su alegato que ésta es una acción de naturaleza reivindicatoria, aun cuando se esfuerza por demostrar que se trata de una perturbación de mero hecho, sobre la cual tiene acción directa la demandante. También se habla en la demanda de que se convino por las partes que se midieran las dos fincas principales, prometiendo el demandado restituir cualquier medida de terreno que pudiese faltar en la finca de Quiñones y que tuviese en exceso dicho demandado. Se practicó la mensura convenida y el demandado, que no estuvo conforme con la misma y con los planos levantados, nombró un agrimensor de su parte que estimó correcta la mensura practicada con anterioridad por el agrimensor Tomás Boucher. No obstante el demandado se negó a entregar la parcela reclamada por la demandante.

Estas alegaciones demuestran que ha habido mensura y plano y que las partes no se han puesto de acuerdo. El demandado, según hemos visto por la demanda, prometió entregar el exceso de terreno, si lo tenía. Aunque se alega que la mensura arrojó este exceso, la verdad es que el demandado continúa detentando la parcela en litigio. A este respecto dice Manresa en el tomo décimo, página 523, de sus "Comentarios al Código Civil":

"Si la perturbación es extrajudicial, creemos que habrá que atender a la especial fisonomía de los hechos para juzgar de ella. El acto de alterar los hitos o mojones de la finca, considerado aisladamente, se debe estimar como una perturbación de mero hecho; pero si a

dicho acto han precedido requerimientos, negociaciones en las que se alegan razones y fundamentos para llevar a cabo la alteración, se han mostrado planos, títulos antiguos, etc., parécenos que una vez realizada la perturbación material, adivínase que ella entraña una cuestión de derecho que tan sólo al arrendador toca discutir. ¿Qué utilidad tendría, puesta la cuestión en estos términos, que el arrendatario emprendiese, por ejemplo, un interdicto, si al cabo el arrendador tendría que venir al debate judicial?

"Por el contrario, si el hecho perturbador no va acompañado ni precedido de nada que revele una intención propiamente *jurídica* en el que lo realiza, de tal suerte que el arrendatario sólo pueda apreciar el hecho material desnudo de toda forma o motivación de derecho, entendemos que se trata de una perturbación de mero hecho.

"Siempre será posible el caso de que lo que aparezca como mero hecho de perturbación resulte estar fundado en un sólido motivo jurídico que prospere ante los tribunales; pero eso no consta al arrendatario de primera intención. Quien tendrá más datos para saberlo será el propietario, a quien se habrá dado noticia del hecho en cumplimiento de lo que dispone el art. 1559; mas si a pesar de conocerlo, nada hace en su consecuencia, no creemos deba el arrendatario considerar la perturbación más que como perturbación de mero hecho y procurar repelerla por sí.

"De lo expuesto se deduce que entre nuestro criterio y el del Código existe alguna diferencia; mas ahondando en el espíritu del precepto, creemos que tal diferencia no es más que aparente. El Código, en el párrafo segundo del artículo que comentamos, alude como norma cualificativa a que el tercero *haya obrado* en virtud de un derecho que le corresponda; nosotros, en lo que hemos venido diciendo, nos fijamos en que el tercero *crea* obrar en virtud de un derecho. No es lo mismo, en rigor, la creencia del perturbador, que el fondo sustancial de su derecho. Pero el párrafo segundo del art. 1560 ni define las perturbaciones de derecho de un modo directo, ni define tampoco, por exclusión, las de mero hecho; limítase a decir que ésta no existe cuando el tercero ha obrado en virtud de un derecho que le corresponde, y esto no está en contradicción con lo que dejamos consignado, pues es claro que cuando el tercero obre en virtud de un derecho que le pertenezca, le acompañará asimismo la creencia a que nosotros nos referimos. En resumen, que el párrafo segundo del artículo 1560 no da un concepto completo, sino que tan sólo formula *uno de los casos* en los cuales se entenderá que no hay perturbación de hecho."

Es de notarse que el artículo 1450 del Código Civil habla únicamente de la perturbación de mero hecho que un tercero causare en el uso de la finca arrendada. El uso consiste en poseer útilmente con todos los beneficios inherentes a la posesión. El goce o disfrute autoriza al arrendatario no solamente para usar sino para disponer, ejerciendo actos de dominio sobre las cosas que la finca produce naturalmente o debido a la industria y labor de su poseedor material. De esta posesión material necesita el arrendatario para poder usar y disfrutar de la finca. En el presente caso no se trata de actos ejecutados dentro de la finca arrendada que perturben a la demandante en el uso de la misma. El demandado no se ha limitado a perturbar a la demandante en el uso del inmueble, respetando su posesión, sino que ha ido más lejos, privándole de esa posesión y consecuentemente de los frutos de la misma. El arrendatario no puede ocupar una posición más ventajosa que el propietario. Si la finca en litigio hubiese estado en posesión de su legítimo dueño éste estaría impedido de obtener su restitución mediante el ejercicio de la acción posesoria. Es claro y evidente que el arrendatario no está autorizado para ejercitar derechos que le son negados a la persona que tiene el dominio sobre el inmueble referido. Se alega como excusa que es ésta una acción de naturaleza reivindicatoria. Es precisamente por esta razón que el arrendatario está impedido de ejercerla. Es el legítimo dueño el llamado a probar los derechos dominicales que pueda tener sobre la parcela detentada, sin que corresponda al arrendatario dirigirse contra el perturbador cuando estos derechos resulten controvertidos.

El caso de *Sucesión José Arrarás Noaín* v. *Figueroa*, 29 D.P.R. 872, citado por la demandante, no es de aplicación a la cuestión fundamental planteada en este litigio. En dicho caso los demandantes alegaron ser los únicos dueños en común proindiviso de la propiedad reclamada. No hay duda de que el dueño legítimo de una propiedad tiene derecho a reivindicarla. En el presente caso la acción se ejercita por

el arrendatario. Si como dice la demandante se trata de un litigio de naturaleza reivindicatoria, es el dueño y no el arrendatario el llamado a promoverlo. La acción posesoria no puede ejercitarse en la actualidad ni por el propietario ni por la demandante, por haber transcurrido en exceso el tiempo fijado para su ejercicio, en la fecha en que se radicó la demanda.

No negamos que el arrendatario pueda reclamar la posesión de la propiedad arrendada mediante el ejercicio de la acción correspondiente, pero si quiere utilizar sus derechos debe ejercerlos dentro del término señalado por la ley.

■■ Se reclaman también en la demanda como segunda causa de acción los frutos producidos por la parcela detentada. El arrendatario, a nuestro juicio, no puede ejercitar esta acción. Si el perturbador tiene algún derecho para poseer el terreno en litigio, el arrendatario no puede exigirle el pago de los frutos. Transcurrido el plazo para el ejercicio de la acción posesoria, hay que acudir a la acción correspondiente para obtener la restitución de la propiedad. No incumbe al arrendatario discutir cuestiones de derecho que atañen al dominio de la finca. Su deber es dirigirse contra el arrendador, haciendo uso de los derechos que la ley le concede.

*Debe confirmarse la sentencia apelada.*